J. R. VAN METER, Appellant, v. CHICAGO & VAN METER COAL MINING COMPANY, Appellee.

1. **Coal Lease: CONSTRUCTION: ABANDONMENT.** A coal lease gave the lessee the right to abandon the property in case the coal underlying same proved unworkable, by reason of its being too thin, bad roof, or for any sufficient reason, which, in the judgment of the lessee, rendered it unprofitable to work the same. It was further provided that, it was not the intention of the lessee to enter upon the surface of any of the lands covered by the lease, but to work the coal therefrom through tho then existing shafts and openings of a coal company then working a lower vein; reserving, however, the right to use any part of said surface, "only in case of unforeseen contingencies which may arise, rendering it necessary and profitable to do so." *Held,* that in its determination of the question whether the coal under said land could be profitably worked, as fixing its right of abandonment of said lease, the lessee was not required to mine or prospect for coal under said land, except from the shafts and openings of said coal company, and that the reservation as to the use of the surface was a mere privilege to the lessee, and imposed no obligation upon him to prospect for coal from the surface of the land to determine whether it could be profitably worked.

2. ――― : ――― : ――― : **CANCELLATION OF RECORD.** Ceasing to operate the mine, and the removal by the lessee of the machinery and appurtenances, *held,* sufficient as acts of abandonment, though the lease was not surrendered, and it and a mortgage given by the lessee upon its interest in the land remained uncanceled of record.

*Appeal from Dallas District Court.*—HON. J. H. APPLE-
GATE, Judge.

MONDAY, MAY 15, 1893.

J. L. PLATT is one of the defendants. On the
twentieth of July, 1881, the plaintiff made to Platt a
written lease of certain described lands in Dallas county
for the purpose of mining coal therein. After describ-
ing the lands, and the manner of working the mines,
the lease contains the following:

"It is further agreed and understood by and
between the parties that, from and after the expiration
of one year from the date hereof, said second party
shall insure to said first party not less than five hun-
dred dollars per annum as revenue from royalty from
coal to be mined from the lands covered by this lease.
It is further agreed and understood that said second
party may, in case the coal which may underlie said
lands should prove unworkable, by reason of its being
too thin, bad roof, or for any reason sufficient, in the
judgment of said second party, to render it unprofitable
to work the same, he may abandon the property, and
be relieved from obligation on so much thereof as he
may so abandon. Said first party also grants said second
party exclusive right to test, open, mine, and remove
said coal, and further grants the right to construct rail-
roads, underground entries, and all necessary buildings
and fixtures to facilitate the mining of said coal, for the
term of thirty years from the date hereof, and the party
of the second part agrees to pay to the party of the
first part, as an annual rental, five dollars per acre for
all lands, the surface of which said second party may
desire to use for the construction of shafts, buildings,
railroads, or other facilities for the successful and con-
venient mining and removal of coal therefrom. It is,
however, understood by and between the parties hereto

that it is not the intention or expectation of said second party to enter upon the surface of any of the lands covered by this lease, but to work the coal therefrom through the now existing shafts and openings of the Chicago & Van Meter Coal Company; the said second party reserving the right to use any part of said surface only in case of unforeseen contingencies which may arise, rendering it necessary and profitable to do so. Said second party also agrees to pay to said first party, or to his legal representatives, as royalty, eight and three-fourths cents per ton of merchantable coal taken from under said lands. Payments of royalty to be made monthly, and the amount of coal taken from said land to be reported monthly, in writing. It is also agreed that all coal mined from said lands is to be accurately weighed, and the weight to be kept in a book, which shall at all reasonable times be open for inspection of said first party; and it is further agreed that the party of the second part is to have the privilege of using said railroads, underground entries, buildings and fixtures for the purpose of mining and removing coal from the lands, and after said mine becomes exhausted, or unworkable, said second party may continue the use of said railroads, underground entries, buildings, and fixtures by paying the said first party the rate hereinbefore specified and agreed upon as compensation for the use of surface."

Platt made the lease, really, in the interest of the Chicago & Van Meter Coal Company, and by assignment the Chicago & Van Meter Coal Mining Company became the lessee in lieu of Platt. This action is to recover five hundred and ninety-nine dollars, with interest; it being for the royalty under the contract for the year 1890. The answer, by way of affirmative defense, shows that, prior to 1890, the defendant abandoned the property and ceased to operate the mine, as was the defendant's right under the terms of the lease,

because, in its judgment the same was unworkable; the coal being "thin, uneven, and irregular." The issue was upon the affirmative defense in the answer, denied by operation of law. A jury returned a verdict for the defendants, and from a judgment thereon the plaintiff appeals.—*Affirmed.*

*White & Clarke*, for appellant.

*Kauffman & Guernsey*, for appellees.

GRANGER, J.—The contentions in the case arise upon a construction of the written lease.

I. It is an undisputed fact that on the premises there were two veins of coal, designated as the "upper" and "lower" veins, and that at the time the lease was made the lower vein was being worked by the Chicago & Van Meter Coal Company by means of shafts and openings therein, and are those mentioned in the lease. No other shafts or openings were made for the purpose of working or discovering workable mines on the land leased. Upon the question of the defendant's right of abandonment, the court gave the following instructions, which constitute a ground of the appellant's complaint:

1. COAL lease: construction: abandonment.

"6. If you find from the evidence in this case that, at the time of the execution of the lease between the plaintiff and the defendant James L. Platt, the Chicago & Van Meter Coal Company was mining coal from what was known as the 'lower vein,' and that the shaft and openings then used by the said company were so built and constructed as that coal could be mined and taken from what was known as the 'upper vein,' then the defendant had no right to abandon said leased premises, unless the coal under said leased premises, in both the upper and lower veins, were or had become unworkable, by reason of being too thin,

bad roof, or for some other reason which, in the judgment of the defendants, honestly and fairly exercised, rendered it unprofitable to work either of said veins. In determining whether the upper vein was unworkable by reason of being too thin, or bad roof, or whether any other reason in the fair and honest judgment of the defendants, rendered it unprofitable to work said upper vein, you should take into consideration all of the testimony in the case, and all the facts and circumstances developed by the proof; and if you find that the defendants, upon the facts and under the circumstances developed by the proof, honestly and fairly concluded that said upper vein could not be profitably worked, by reason of being too thin, bad roof, or for any other reason in the fair and honest exercise of judgment, then the defendants had the right to abandon said premises without testing said vein immediately under the surface of the lands covered by the lease between the plaintiff and the defendant James L. Platt.

"7.   The defendants were under no obligations to prospect for coal at different points or places on said leased premises, and ascertain that there was no workable coal under any part of said premises.   They had the right, under and by virtue of the lease of said premises, to abandon said property if the vein or veins being worked, or that could have been worked, from the shafts and openings of the Chicago & Van Meter Coal Company, existing at the time of the execution of said lease between the plaintiff and defendant James L. Platt, became or were unworkable by reason of the coal being too thin, bad roof, or for any reason which, in the judgment of the defendants, honestly and fairly exercised, rendered it unprofitable to work said mine."

The appellant asked several instructions, but the following will indicate the rule of law as claimed, and

quite clearly present the legal proposition to be considered:

"2. The defendants were not, in the working and mining coal from plaintiff's lands, confined to the use of the shafts and openings of the Chicago & Van Meter Coal Company, in existence at the date of the lease in controversy, in case the coal became unworkable therefrom, but might employ any part of the surface of plaintiff's lands for such shafts and openings as were necessary and profitable for such working; and it was their duty to do so, if thereby they might reasonably find and work workable coal on plaintiff's lands."

"5. Before the defendants would have a right to abandon the whole of the plaintiff's land upon the ground that, in the exercise of a fair and reasonable judgment, the coal thereunder had proved unworkable, they must either determine that fact by actually mining coal therefrom, or by such tests as are ordinarily employed by persons conducting such operations for the purpose of ascertaining whether there is workable coal thereon."

It will thus be seen that the point of difference arises upon the obligation of the defendant to do more than to work and prospect from the shafts and openings of the Chicago & Van Meter Coal Company, in order to properly exercise its judgment as to there being "workable coal," so as to require it to continue operations under the lease. It seems to us that the language of the lease gives full support to the rule adopted by the district court. We quote: "It is, however, understood by and between the parties hereto that it is not the intention or expectation of said second party to enter upon the surface of any of the lands covered by this lease, but to work the coal therefrom through the now existing shafts and openings of the Chicago & Van Meter Coal Company." Thus far the language is not

open to construction. It seems conclusive in its support of the action of the court. But the following is to be added as a part of the sentence, which, it is urged, so modifies it as to sustain the appellant's view: "The said second party reserving the right to use any part of said surface only in case of unforeseen contingencies which may arise, rendering it necessary and profitable to do so." The latter language is but the reservation of a right to be exercised if a contingency then unforeseen should arise. There could be no contingency to justify the exercise of the reserved right until it was seen or known. Before such a contingency arose, the defendant would have no right "to enter upon the surface of any of the lands" covered by the lease "to work coal therefrom." It seems to us this language is unmistakably plain. Without the reservative clause of the lease, the defendant would have no right whatever to mine coal, except from the shafts or openings specified. The reservation is in the nature of a privilege. It does not impose an obligation. It is said by the appellant: "Such unforeseen contingency would be the existence of a workable vein on the plaintiff's land, not necessarily by way of the existing shaft." But, if there is such a vein, it is still "unforeseen." It has not arisen,—that is, "come into notice" or "become visible," which is the evident meaning of the word "arise," as used in the lease. But, if it had arisen, it is then as we have said, but the privilege and not the obligation, of the defendant to work it, by the terms of the lease. The court did not err in the instructions given, and hence not in refusing those asked.

II. The defendant, after the lease was made, executed certain mortgages upon its interest in the leased premises; and its acts of abandonment were, merely, to cease operating the mine, and the removal of machinery and the appurtenances. It is urged that there could be no abandonment without

2. ——: ——: ——: cancellation of record.

the cancellation of record, and a surrender of the leases, and also a cancellation of the mortgages. The language of the lease in regard to abandonment is as follows: "It is further agreed and understood that the second party may, in case the coal·which may underlie said lands should prove unworkable, by reason of its being too thin, bad roof, or for any reason sufficient, in the judgment of the said second party, to render it unprofitable to work the same, he may abandon the property, and be relieved from obligation on so much thereof as he may so abandon." We can see no relation whatever between these instruments of record and the obligation to pay a royalty upon coal that should be mined. Concede that the instruments of record might in some way cast a cloud upon the title to the land, and the conclusion is the same. When the lease was made it is not probable, if even possible, that the parties contemplated that the act of abandoning the property should in any degree consist of such an act as canceling instruments of record. It is, however, highly probable that they contemplated.just what was done in this case,— that is, to quit; to stop the work entirely. The instruments of record will not continue the operation of the lease so as to entitle plaintiff to royalty. If he is damaged thereby, it is a question independent of this proceeding. The judgment is AFFIRMED.